IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CATHY REECE, on behalf of
herself and all those similarly
situated,

    Plaintiff,

v.

UNITED HOME CARE OF
NORTH ATLANTA, INC.,
UNITED HOME CARE, INC., and
UHS-PRUITT CORPORATION
a/k/a PRUITT CORPORATION,

    Defendants.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CIVIL ACTION NO.
1:12-CV-2070-RWS

## ORDER

This case is before the Court on Defendants' Motion to Disqualify Alan H. Garber and the Garber Law Firm, P.C. from Representing Plaintiffs [60]. After reviewing the record and the Parties' submissions, the Court enters the following Order.

### Background

Cathy Reece filed suit against Defendants on June 15, 2012. This matter has been conditionally certified as a collective action, and Plaintiffs are represented by Alan H. Garber and Marc N. Garber of the Garber Law Firm,

AO 72A
(Rev.8/82)

and by Dianne Cherry of the Cherry Law Firm.  Plaintiffs, licensed practical

nurses ("LPNs"), allege that Defendants violated the Fair Labor Standards Act

("FLSA") by not properly paying them for their overtime hours.

Tina Peery ("Peery") was the Regional Administrator at United Home

Care of North Atlanta ("UHC-North Atlanta") from May 2012 until October

2013.  The Parties' representations regarding the duties of Regional

Administrators, and Peery in particular, differ significantly.  (See Southworth

Declaration, [60-1] ¶¶ 5-19; Peery Declaration, [67-1] ¶¶ 28-36.)  However, the

Parties appear to agree that Peery served as Regional Administrator during the

time that three opt-in Plaintiffs (Mary Jane Santos, Stacey Sargent, and Denice

Stokes) were working for UHC-North Atlanta.

Since July 2012, Rita Southworth ("Southworth") has been employed by

UHS-Pruitt Corporation ("UHS") as Vice-President for Home Care.  On June

27, 2012, Southworth participated in a confidential and privileged call with

Defendants' in-house and outside counsel regarding strategy for responding to

Plaintiffs' claims.  Peery and several other Regional Administrators also

participated in the call.  Additionally, in assisting defense counsel, Southworth

"communicated confidential attorney-client communications and attorney work

product to Peery when she was Regional Administrator . . . ." (Southworth Declaration, [60-1] ¶ 25.)  Further, Southworth states, "Peery assisted [her] in investigating Plaintiffs' claims and responding to privileged and confidential communications from in-house and outside legal counsel." (Id. ¶ 27.)

On November 6, 2013, Alan Garber ("Garber") contacted UHS and informed them that he was representing Peery in a separate action against them. Peery had retained Garber to represent her in a Medicare-fraud False Claims Act retaliation/*Qui Tam* action against UHS.  On November 18, 2013, Defendants' counsel notified Garber of a potential conflict of interest arising from Garber's concurrent representation of Peery and Plaintiffs.  Subsequently, Peery and the three opt-in Plaintiffs (Santos, Sargent, and Stokes) consented to Garber's simultaneous representation and waived any conflicts that could possibly arise.  Those waivers were memorialized in writing on November 21, 2013.  (See Waivers, [67-2].)  Still, Defendants requested that Garber withdraw as counsel for Plaintiffs; Garber refused, and this motion ensued.

After learning of this motion to disqualify, Peery and Garber decided that Peery should hire a new attorney.  Peery did so, and she submitted her

3

declaration [67-1] in support of Plaintiffs' response to this motion with the assistance of her new counsel.

## Discussion

All attorneys practicing in the Northern District of Georgia must comply with the Code of Professional Responsibility and Standards of Conduct ("RPC") contained in the State Bar of Georgia's Rules and Regulations, and judicial decisions interpreting those rules and standards. N.D. Ga. LR 83.1(C). In Georgia, "in the absence of contrary evidence, it will be presumed that members of our State Bar have properly complied with the Bar's ethnical directory and disciplinary rules." Gene Thompson Lumber Co. v. Davis Parmer Lumber Co., 377 S.E.2d 15, 17 (Ga. Ct. App. 1988).

As a general rule, motions to disqualify counsel are viewed disfavorably. "The right to counsel is an important interest which requires that any curtailment of the client's right to counsel of choice be approached with great caution." Bernocchi v. Forcucci, 614 S.E.2d 775, 778 (Ga. 2005) (internal quotation marks and citation omitted). "Because of the right involved and the hardships brought about, disqualification of chosen counsel should be seen as an extraordinary remedy and should be granted sparingly. Id.; see also Nortan

4

v. Tallahassee Mem'l Hosp., 689 F.2d 938, 941 n.4 (11th Cir. 1982)

("[d]isqualification is a harsh sanction, often working substantial hardship on

the client," and should be "resorted to sparingly").

Motions to disqualify brought by opposing counsel are automatically

viewed with circumspection.  See Id. (motions from opposing counsel "should

be viewed with caution . . . for it can be misused as a technique of harassment").

Accordingly, opposing counsel may move for disqualification only when there

is "a violation of the rules which is sufficiently severe to call in question the fair

and efficient administration of justice."  Id. at 779 (citing RPC 1.7, cmt. 15).

Moreover, "[t]he party bringing the motion to disqualify bears the burden of

proving the grounds for disqualification."  Herrmann v. GutterGuard, Inc., 199

Fed. App'x 745, 752 (11th Cir. 2006) (citing In re: BellSouth Corp., 334 F.3d

941, 961 (11th Cir. 2003)).

Defendants argue that Garber's concurrent representation of Plaintiffs

and Peery violated RPC 1.7.  Under that Rule, a lawyer "shall not represent or

continue to represent a client if there is a significant risk that the lawyer's own

interests or the lawyer's duties to another client . . . will materially and

adversely affect the representation to the client . . . ."  RPC 1.7(a).  However,

AO 72A
(Rev.8/82)

"notwithstanding a significant risk of material and adverse effect," simultaneous representation of clients whose interests in litigation may conflict is a "waivable" conflict.  RPC 1.7(b).

Plaintiffs argue that Garber has not violated RPC 1.7.   As Plaintiffs note, "[i]t is not facially improper to simultaneously represent a party in a case and also to represent a non-adversarial, fact witness in that case."  ChemFree Corp. v. J. Walter, Inc., No. 1:04-CV-3711-JTC, 2008 WL 5234252, *2 (N.D. Ga. 2008).  Plaintiffs maintain that Peery is not an adverse witness to Plaintiffs because she has no knowledge about Defendants' possible FLSA violations. According to Peery's declaration testimony, she does not know now, nor has she ever known, if the LPNs who worked at UHC-North Atlanta were properly compensated for their overtime hours.  (Peery Declaration, [67-1] ¶ 37.) Indeed, when Peery retained Garber, Defendants had not listed Peery as a witness in any of their Rule 26 disclosures.  Furthermore, Plaintiffs argue, even if Peery is an adverse witness to Plaintiffs, the opt-in Plaintiffs and Peery waived any potential conflict and thus, no violation of RPC 1.7 occurred.

Defendants reply: "any waiver by Peery and Plaintiffs does not correct the conflict of interest from undermining Defendants' right to a fair trial on the

6

merits of Plaintiffs' claims and right to maintain the confidentiality of its privileged attorney-client communications and attorney work product." (Def.s' Reply Br., [73] at 6 of 20.) The Court is uncertain how Defendants' reply is relevant to the RPC 1.7 inquiry. However, the argument may implicate RPC 4.4: "In representing a client, a lawyer shall not . . . use methods of obtaining evidence that violate the legal rights of [a third] person."

Defendants argue that Garber's representation of Peery calls into question the fair and efficient administration of justice because he elected to represent Peery knowing that she had participated in the Defendants' attorney-client communications and in their defense of this lawsuit. Defendants appear to argue, rather circuitously, that in order for Garber to properly represent the interests of both Plaintiffs and Peery, Peery would have to share with him Defendants' confidential and privileged information pertaining to this case. In other words, they insinuate, Garber's RPC 1.7 obligations will force him to violate RPC 4.4. Defendants also suggest that Peery "may feel pressured to testify on behalf of Plaintiffs" because of Garber's simultaneous representation. However, mere speculation is not sufficient to deprive Plaintiffs of their counsel of choice. See Lewis v. State, 718 S.E.2d 112, 122 (Ga. Ct. App. 2011).

7

The Court is not persuaded by Defendants' arguments for several reasons.  First, Peery has declared that she has no knowledge of Defendants' potential FLSA liability.  Second, the matter for which Peery retained Garber – a Medicare-fraud False Claims Act suit – is entirely unrelated to this FLSA case.  Third, when Peery first contacted Garber, he explicitly informed her that he did not want to hear anything about what Peery may have heard, seen, done, learned, or been told about any lawsuits filed against UHC or UHS.  (Peery Declaration, [67-1] ¶¶ 12-16.)  He also told her that he did not want to hear anything about how LPNs were compensated by UHC or UHS.  (Id. ¶ 16.)

According to Peery, she has never revealed to Garber or anyone else any communications or information pertaining to this lawsuit.  (Id. ¶¶ 18-21.)  Her disclosures in relation to this case are limited to background information regarding her job responsibilities as a Regional Administrator, and were only submitted for purposes of opposing Southworth's statements on the same topic made in support of the present motion.  (Id. ¶¶ 22-36.)  Defendants offer no countering evidence that disclosure of confidential or privileged information has occurred.  Finally, Peery is no longer represented by Garber, so there is no apparent danger of future wrongful disclosures by Peery to Garber.

Therefore, the Court finds that Defendants have not shown a violation, let alone a severe violation, of RPC 1.7 or 4.4.  As a result, Defendants have no standing to move for Garber's disqualification as Plaintiffs' counsel and their motion is **DENIED.**  Defendants alternatively move the Court to order discovery regarding Garber's potential conflict.  Specifically, Defendants seek: (1) copies of the waivers obtained from Plaintiffs and Peery; (2) all communications between the Garber Law Firm and Peery related to this matter; (3) information about whether Diane Cherry represents Peery; (4) all communications between the Cherry Law Firm and Peery related to this matter; and (5) all communications between the Garber and Cherry firms regarding any information obtained from Peery related to this litigation.  Some of this information has already been addressed in Plaintiffs' submissions. Additionally, Peery submitted declaration testimony that no communications occurred between her and Plaintiffs' counsel regarding this matter.  The Court accepts her representation and therefore finds Defendants' requested discovery unnecessary.

9

AO 72A
(Rev.8/82)

## Conclusion

Based on the foregoing, Defendants' Motion to Disqualify [60] is

**DENIED.**

**SO ORDERED**, this  2nd  day of May, 2014.

_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)