# Exhibit 1

## Settlement Agreements for:

**(1) Cathy Reece;**
**(2) David Allmon:**
**(3) Karen Allmon;**
**(4) Dianne Hughes;**
**(5) Lawrence Russell;**
**(6) Mary Jane Santos;**
**(7) Stacey Sargent;**
**(8) Sandra Shaw-Lo;**
**(9) Teresita Small; and**
**(10)    Denice Stokes**

# Cathy Reece-
# Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Cathy Reece ("Reece") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc.,  PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS,** Reece filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece*, on behalf of herself and all those similarly situated, *v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation*, Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS,** PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHEREAS,** Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Reece have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Reece with certain considerations described below, provided Reece releases PruittHealth from any claims Reece has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1.   **Recitals**: The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2. **Definitions**: Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

   (A)   PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (B)   PruittHealth Home Health - North Atlanta, Inc. (d/b/a PruittHealth Home Health – Cobb) f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

   (C)   PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (D)   the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3. **Settlement Sum and Payment**: As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Reece the sum of Thirty Three Thousand Six Hundred Ninety Two Dollars and 00/100 Cents ($33,692.00), less lawful deductions. This sum shall be allocated as follows:

   (A)   PruittHealth shall make payment in the amount of Five Thousand Five Hundred Dollars and 00/100 Cents ($5,500.00), less such applicable deductions, payable to Cathy Reece. This payment shall be characterized as back wages, and PruittHealth will issue Reece an IRS Form W-2; and,

   (B)   PruittHealth shall make payment in the amount of Five Thousand Five Hundred Dollars and 00/100 Cents ($5,500.00), payable to Cathy Reece. This amount shall be characterized as liquidated damages, and PruittHealth will issue Reece an IRS Form 1099.

   (C)   PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Twenty Two Thousand Six Hundred Ninety Two Dollars and 00/100 Cents ($22,692.00) as Attorney's Fees and Costs in this Lawsuit. PruittHealth shall issue IRS Forms 1099 to Reece and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

   PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the

2

receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Reece; (2) an executed letter from Reece in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Reece and Reece's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4.    **Consideration**: Reece understands and agrees that she will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until her execution of this AGREEMENT including the promises contained herein.

5.    **General Release of Claims**: In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Reece, for herself and for each of her heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Reece may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to: back pay; front pay; reinstatement; damages; or benefits. Reece also releases any and all claims she may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act;

Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Reece further represents and affirms that she has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with her efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Reece may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Reece understands and agrees that she is releasing PruittHealth from any and all of the above-specified claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Reece or on Reece's behalf, except as otherwise set forth in this Agreement.

6.     **Tax Liability**: Reece understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Reece understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Reece regarding payment whatsoever, except as set forth in this AGREEMENT. Reece agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Reece further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Reece. In the event Reece receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Reece shall promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7.    **Affirmations**:  Reece represents and affirms that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8.    **No Further Employment**:  Reece acknowledges that her employment with United Home Care of North Atlanta, Inc. terminated effective on or about October 25, 2011.  Reece permanently, unequivocally, and unconditionally waives any and all rights Reece may now have, may have had in the past, or may have in the future to obtain or resume employment with PruittHealth.  Reece agrees never to apply for employment with PruittHealth, its parent, successors, affiliates, and subsidiaries.  In the event that Reece is ever mistakenly employed by PruittHealth, its parent, successors, affiliates, and/or subsidiaries, Reece agrees to have her employment terminated with no resulting claim or cause of action against PruittHealth, its parent, successors, affiliates, and/or subsidiaries.

9.    **No Assignment**:  The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10.   **Non-Disparagement**:  Reece agrees that she will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute.  PruittHealth agrees that it will provide a neutral job reference regarding Reece limited to dates of employment.  Any request for a job reference should be directed to fax number (678) 533-6673.

11.   **Governing Law and Jurisdiction**:  This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event Reece or PruittHealth breaches any provision of this AGREEMENT, Reece and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12.   **Conditions**:  Should Reece ever breach any provision or obligation under this AGREEMENT, Reece explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Reece's breach.  Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies PruittHealth may have by virtue of this AGREEMENT or otherwise.  Should PruittHealth ever breach any provision or obligation under this AGREEMENT, PruittHealth explicitly agrees to pay all damages (including, but not limited to,

litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Reece as a result of PruittHealth's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Reece or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13.   **No Admission of Liability**: The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14.   **Headings**: The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15.   **Modification of Agreement**: This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Reece agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever. No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged. The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16.   **Interpretation**: The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17.   **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable. However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT. To the extent any provision herein that relates to the dismissal of Reece's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Reece shall return any amounts paid by PruittHealth.

18.   **Binding Nature of Agreement**: This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives,

executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19. **Entire Agreement**:  This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Reece.  Reece acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20. **Notice Requirements:**  Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided.  Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent.  Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof.  The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Cathy Reece
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21. **Selective Enforcement**:  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22. **Compliance with Older Workers Benefit Protection Act**: Reece, being 40 years of age or older, is advised of and acknowledges the following:

(A)   **Twenty-One Day Consideration Period**.  Reece shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21.  During this twenty-one (21) day period and before signing this AGREEMENT, Reece is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at her own expense.  The terms and provisions of this AGREEMENT are null and void if not accepted by Reece within the twenty-one (21) day period.  Reece may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

(B)   **Release of Age Discrimination in Employment Act Claims**.  By signing this AGREEMENT, Reece waives any claims she has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Reece's execution of the AGREEMENT.

(C)   **Revocation Period**. Reece shall have seven (7) calendar days from the date she signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period.  Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release."  The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Reece's execution of this AGREEMENT.  This AGREEMENT shall not become effective or enforceable until the revocation period has expired.  If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**REECE IS HEREBY ADVISED THAT SHE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**REECE AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, REECE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

**ACCEPTED AND AGREED:**

By: _____          _____
      CATHY REECE                                              Date

STATE OF GEORGIA
COUNTY OF _____

      BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared  Cathy Reece , known to me to
be the person whose name is subscribed to the foregoing instrument and signed in my
presence and swore upon oath this AGREEMENT was executed for the purposes and
consideration therein expressed.

      SUBSCRIBED AND SWORN TO BEFORE ME on this _____day of _____
_____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____


**ACCEPTED AND AGREED:**

By: _____          _____
      PruittHealth                                                  Date

**EXHIBIT A**


PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:    Agreement and General Release

Dear Sir/Madam:

     On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

     More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

                    Very truly yours,



                    Cathy Reece

# David Allmon-
# Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between David Allmon ("Allmon") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc.,  PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS,** Allmon filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece, on behalf of hisself and all those similarly situated, v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation,* Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS,** PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHISEAS,** Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Allmon have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Allmon with certain considerations described below, provided Allmon releases PruittHealth from any claims Allmon has made or might make arising out of his employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1.  **Recitals**: The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.  **Definitions**:  Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

   (A)   PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (B)   PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

   (C)   PruittHealth Home Health, Inc. (d/b/a PruittHealth Home Health – Fort Oglethorpe) f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (D)   the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.  **Settlement Sum and Payment**:  As consideration for making this AGREEMENT and compliance with the promises set forth hisein, PruittHealth agrees to pay to Allmon the sum of Three Hundred Ninety-Eight Dollars and 00/100 Cents ($398.00), less lawful deductions.  This sum shall be allocated as follows:

   (A)   PruittHealth shall make payment in the amount of Seventy-Five Dollars and 00/100 Cents ($ 75.00), less such applicable deductions, payable to David Allmon.  This payment shall be characterized as back wages, and PruittHealth will issue Allmon an IRS Form W-2; and,

   (B)   PruittHealth shall make payment in the amount of Seventy-Five Dollars and 00/100 Cents ($75.00), payable to David Allmon.  This amount shall be characterized as liquidated damages, and PruittHealth will issue Allmon an IRS Form 1099.

   (C)   PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Two Hundred Forty-Eight Dollars and 00/100 Cents ($248.00) as Attorney's Fees and Costs in this Lawsuit.  PruittHealth shall issue IRS Forms 1099 to Allmon and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

   PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the receipt of all of the following items, unless the Court directs otherwise:  (1) an

original of this AGREEMENT appropriately signed and dated by Allmon; (2) an executed letter from Allmon in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Allmon and Allmon's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT.  The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4.  **Consideration**:  Allmon understands and agrees that he will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until his execution of this AGREEMENT including the promises contained herein.

5.  **General Release of Claims**:  In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Allmon, for himself and for each of his heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Allmon may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to:  back pay; front pay; reinstatement; damages; or benefits.  Allmon also releases any and all claims he may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act; Sections 1981 through 1988 of Title 42 of the United States Code, as amended;

the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Allmon further represents and affirms that he has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with his efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Allmon may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Allmon understands and agrees that he is releasing PruittHealth from any and all of the above-specified claims by which he is giving up the opportunity to recover any compensation, damages, or any othis form of relief in any proceeding brought by Allmon or on Allmon's behalf, except as otherwise set forth in this Agreement.

6.   **Tax Liability**: Allmon understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Allmon understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is his sole responsibility, and that he will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Allmon regarding payment whatsoever, except as set forth in this AGREEMENT. Allmon agrees to bear all tax consequences, if any, attendant upon the payment to his of the above-recited sums. Allmon further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Allmon. In the event Allmon receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Allmon shall promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7. **Affirmations**: Allmon represents and affirms that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due his, except as provided for in this AGREEMENT.

8. **No Further Employment**: Allmon acknowledges that his employment with United Home Care, Inc. d/b/a United Home Care – Fort Oglethorpe terminated effective on or about July 27, 2014. Allmon permanently, unequivocally, and unconditionally waives any and all rights Allmon may now have, may have had in the past, or may have in the future to obtain or resume employment with PruittHealth. Allmon agrees never to apply for employment with PruittHealth, its parent, successors, affiliates, and subsidiaries. In the event that Allmon is ever mistakenly employed by PruittHealth, its parent, successors, affiliates, and/or subsidiaries, Allmon agrees to have his employment terminated with no resulting claim or cause of action against PruittHealth, its parent, successors, affiliates, and/or subsidiaries.

9. **No Assignment**: The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10. **Non-Disparagement**: Allmon agrees that he will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute. PruittHealth agrees that it will provide a neutral job reference regarding Allmon limited to dates of employment. Any request for a job reference should be directed to fax number (678) 533-6673.

11. **Governing Law and Jurisdiction**: This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event Allmon or PruittHealth breaches any provision of this AGREEMENT, Allmon and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12. **Conditions**: Should Allmon ever breach any provision or obligation under this AGREEMENT, Allmon explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Allmon's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies PruittHealth may have by virtue of this AGREEMENT or otherwise. Should PruittHealth ever breach any provision or obligation under this AGREEMENT, PruittHealth explicitly agrees to pay all damages (including, but not limited to,

litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Allmon as a result of PruittHealth's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Allmon or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**: The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**: The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**: This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Allmon agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever. No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged. The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**: The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable. However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT. To the extent any provision herein that relates to the dismissal of Allmon's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Allmon shall return any amounts paid by PruittHealth.

18. **Binding Nature of Agreement**: This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives,

executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19.   **Entire Agreement**:  This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Allmon.  Allmon acknowledges that he has not relied on any representations, promises, or agreements of any kind made to his in connection with his decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20.   **Notice Requirements:**  Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided.  Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent.  Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof.  The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

David Allmon
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21.   **Selective Enforcement**:  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22.   **Compliance with Older Workers Benefit Protection Act**: Allmon, being 40 years of age or older, is advised of and acknowledges the following:

(A)   **Twenty-One Day Consideration Period**.  Allmon shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21.  During this twenty-one (21) day period and before signing this AGREEMENT, Allmon is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at his own expense.  The terms and provisions of this AGREEMENT are null and void if not accepted by Allmon within the twenty-one (21) day period.  Allmon may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

(B)   **Release of Age Discrimination in Employment Act Claims**.  By signing this AGREEMENT, Allmon waives any claims he has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Allmon's execution of the AGREEMENT.

(C)   **Revocation Period**. Allmon shall have seven (7) calendar days from the date he signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period.  Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release."  The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Allmon's execution of this AGREEMENT.  This AGREEMENT shall not become effective or enforceable until the revocation period has expired.  If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**ALLMON IS HEREBY ADVISED THAT HE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**ALLMON AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, ALLMON FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

**ACCEPTED AND AGREED:**

By: _____          _____
       DAVID ALLMON                                                                    Date


       STATE OF GEORGIA
       COUNTY OF _____

       BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared _David Allmon_, known to me to
be the person whose name is subscribed to the foregoing instrument and signed in my
presence and swore upon oath this AGREEMENT was executed for the purposes and
consideration therein expressed.

       SUBSCRIBED AND SWORN TO BEFORE ME on this _____day of _____
_____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____


**ACCEPTED AND AGREED:**

By: _____          _____
       PruittHealth                                                                          Date

**EXHIBIT A**


PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:   Agreement and General Release

Dear Sir/Madam:

On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

Very truly yours,


David Allmon

# Karen Allmon-
# Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Karen Allmon ("Allmon") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc., PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/d/b/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS,** Allmon filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece, on behalf of herself and all those similarly situated, v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation,* Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS,** PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHEREAS,** Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Allmon have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Allmon with certain considerations described below, provided Allmon releases PruittHealth from any claims Allmon has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1.  **Recitals**: The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.   **Definitions**:  Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

   (A)   PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (B)   PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

   (C)   PruittHealth Home Health, Inc. (d/b/a PruittHealth Home Health – Rome) f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (D)   the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.   **Settlement Sum and Payment**:  As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Allmon the sum of Three Thousand Six Hundred Eighty Dollars and 00/100 Cents ($3,680.00), less lawful deductions.  This sum shall be allocated as follows:

   (A)   PruittHealth shall make payment in the amount of Six Hundred Dollars and 00/100 Cents ($ 600.00), less such applicable deductions, payable to Karen Allmon.  This payment shall be characterized as back wages, and PruittHealth will issue Allmon an IRS Form W-2; and,

   (B)   PruittHealth shall make payment in the amount of Six Hundred Dollars and 00/100 Cents ($600.00), payable to Karen Allmon.  This amount shall be characterized as liquidated damages, and PruittHealth will issue Allmon an IRS Form 1099.

   (C)   PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Two Thousand Four Hundred Eighty Dollars and 00/100 Cents ($2,480.00) as Attorney's Fees and Costs in this Lawsuit.  PruittHealth shall issue IRS Forms 1099 to Allmon and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

   PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the

receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Allmon; (2) an executed letter from Allmon in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Allmon and Allmon's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4.   **Consideration**: Allmon understands and agrees that she will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until her execution of this AGREEMENT including the promises contained herein.

5.   **General Release of Claims**: In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Allmon, for herself and for each of her heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Allmon may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to: back pay; front pay; reinstatement; damages; or benefits. Allmon also releases any and all claims she may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act;

Page 3

Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Allmon further represents and affirms that she has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with her efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Allmon may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Allmon understands and agrees that she is releasing PruittHealth from any and all of the above-specified claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Allmon or on Allmon's behalf, except as otherwise set forth in this Agreement.

6.    **Tax Liability**: Allmon understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Allmon understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Allmon regarding payment whatsoever, except as set forth in this AGREEMENT. Allmon agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Allmon further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Allmon. In the event Allmon receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Allmon shall promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7.   **Affirmations**:  Allmon represents and affirms that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8.   **Acknowledgement and Authorization**:  I am a current employee of PruittHealth Home Health, Inc. d/b/a PruittHealth Home Health – Rome and I acknowledge, understand, agree, and state that: (1) I am currently correctly and accurately reporting my working time, I am being paid correctly, and the compensation for my working time is being calculated correctly; (2) I will comply with PruittHealth's payroll reporting policies and accurately report all working time; (3) I will immediately report to a designated Company contact any improper instruction by anyone to work off-the-clock, otherwise under report any working time, or my belief that I am not being properly compensated for the work I perform; and (4) I will not perform any off-the-clock work.

9.   **No Assignment**:  The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10.   **Non-Disparagement**:  Allmon agrees that she will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute.

11.   **Governing Law and Jurisdiction**:  This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event Allmon or PruittHealth breaches any provision of this AGREEMENT, Allmon and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12.   **Conditions**:  Should Allmon ever breach any provision or obligation under this AGREEMENT, Allmon explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Allmon's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies PruittHealth may have by virtue of this AGREEMENT or otherwise.  Should PruittHealth ever breach any provision or obligation under this AGREEMENT, PruittHealth explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Allmon as a result of PruittHealth's breach.  Nothing in this paragraph

shall, or is intended to, limit or restrict any other rights or remedies Allmon or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**:  The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**:  The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**:  This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties.  Allmon agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever.  No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged.  The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**:  The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.  This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable.  However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT.  To the extent any provision herein that relates to the dismissal of Allmon's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Allmon shall return any amounts paid by PruittHealth.

18. **Binding Nature of Agreement**:  This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each party

and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19.   **Entire Agreement**:  This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Allmon. Allmon acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20.   **Notice Requirements:**  Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided. Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt. Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent. Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof. The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Karen Allmon
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21.   **Selective Enforcement**:  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22.   **Compliance with Older Workers Benefit Protection Act**: Allmon, being 40 years of age or older, is advised of and acknowledges the following:

(A) **Twenty-One Day Consideration Period**. Allmon shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21. During this twenty-one (21) day period and before signing this AGREEMENT, Allmon is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at her own expense. The terms and provisions of this AGREEMENT are null and void if not accepted by Allmon within the twenty-one (21) day period. Allmon may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

(B) **Release of Age Discrimination in Employment Act Claims**. By signing this AGREEMENT, Allmon waives any claims she has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Allmon's execution of the AGREEMENT.

(C) **Revocation Period**. Allmon shall have seven (7) calendar days from the date she signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period. Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release." The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Allmon's execution of this AGREEMENT. This AGREEMENT shall not become effective or enforceable until the revocation period has expired. If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**ALLMON IS HEREBY ADVISED THAT SHE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**ALLMON AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, ALLMON FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

**ACCEPTED AND AGREED:**

By: _____          _____
     KAREN ALLMON                                        Date


     STATE OF GEORGIA
     COUNTY OF _____

     BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared _Karen Allmon_, known to me to
be the person whose name is subscribed to the foregoing instrument and signed in my
presence and swore upon oath this AGREEMENT was executed for the purposes and
consideration therein expressed.

     SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of _____
_____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____


**ACCEPTED AND AGREED:**

By: _____          _____
     PruittHealth                                          Date

## EXHIBIT A

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:   <u>Agreement and General Release</u>

Dear Sir/Madam:

      On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

      More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

                                Very truly yours,

                                Karen Allmon

# Dianne Hughes-
# Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Dianne Hughes ("Hughes") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc.,  PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS,** Hughes filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece*, on behalf of herself and all those similarly situated, *v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation*, Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS,** PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHEREAS,** Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Hughes have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Hughes with certain considerations described below, provided Hughes releases PruittHealth from any claims Hughes has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1. **Recitals**: The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.   **Definitions**:  Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

   (A)   PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (B)   PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

   (C)   PruittHealth Home Health, Inc. (d/b/a PruittHealth Home Health – Blue Ridge) f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (D)   the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.   **Settlement Sum and Payment**:  As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Hughes the sum of Two Thousand Seven Hundred Sixty Dollars and 00/100 Cents ($2,760.00), less lawful deductions.  This sum shall be allocated as follows:

   (A)   PruittHealth shall make payment in the amount of Four Hundred Fifty Dollars and 00/100 Cents ($ 450.00), less such applicable deductions, payable to Dianne Hughes.  This payment shall be characterized as back wages, and PruittHealth will issue Hughes an IRS Form W-2; and,

   (B)   PruittHealth shall make payment in the amount of Four Hundred Fifty Dollars and 00/100 Cents ($450.00), payable to Dianne Hughes.  This amount shall be characterized as liquidated damages, and PruittHealth will issue Hughes an IRS Form 1099.

   (C)   PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of One Thousand Eight Hundred Sixty Dollars and 00/100 Cents ($1,860.00) as Attorney's Fees and Costs in this Lawsuit.  PruittHealth shall issue IRS Forms 1099 to Hughes and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the

receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Hughes; (2) an executed letter from Hughes in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Hughes and Hughes's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4.   **Consideration**:  Hughes understands and agrees that she will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until her execution of this AGREEMENT including the promises contained herein.

5.   **General Release of Claims**:  In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Hughes, for herself and for each of her heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Hughes may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to:  back pay; front pay; reinstatement; damages; or benefits.  Hughes also releases any and all claims she may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act;

Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Hughes further represents and affirms that she has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with her efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Hughes may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Hughes understands and agrees that she is releasing PruittHealth from any and all of the above-specified claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Hughes or on Hughes's behalf, except as otherwise set forth in this Agreement.

6.   **Tax Liability**: Hughes understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Hughes understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Hughes regarding payment whatsoever, except as set forth in this AGREEMENT. Hughes agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Hughes further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Hughes. In the event Hughes receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Hughes shall promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7.   **Affirmations**:  Hughes represents and affirms that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8.   **No Further Employment**:  Hughes acknowledges that her employment with United Home Care, Inc. d/b/a United Home Care – Blue Ridge terminated effective on or about April 21, 2013.  Hughes permanently, unequivocally, and unconditionally waives any and all rights Hughes may now have, may have had in the past, or may have in the future to obtain or resume employment with PruittHealth.  Hughes agrees never to apply for employment with PruittHealth, its parent, successors, affiliates, and subsidiaries.  In the event that Hughes is ever mistakenly employed by PruittHealth, its parent, successors, affiliates, and/or subsidiaries, Hughes agrees to have her employment terminated with no resulting claim or cause of action against PruittHealth, its parent, successors, affiliates, and/or subsidiaries.

9.   **No Assignment**:  The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10.   **Non-Disparagement**:  Hughes agrees that she will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute.  PruittHealth agrees that it will provide a neutral job reference regarding Hughes limited to dates of employment.  Any request for a job reference should be directed to fax number (678) 533-6673.

11.   **Governing Law and Jurisdiction**:  This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event Hughes or PruittHealth breaches any provision of this AGREEMENT, Hughes and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12.   **Conditions**:  Should Hughes ever breach any provision or obligation under this AGREEMENT, Hughes explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Hughes's breach.  Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies PruittHealth may have by virtue of this AGREEMENT or otherwise.  Should PruittHealth ever breach any provision or obligation under this AGREEMENT,

PruittHealth explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Hughes as a result of PruittHealth's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Hughes or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**: The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**: The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**: This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Hughes agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever. No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged. The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**: The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable. However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT. To the extent any provision herein that relates to the dismissal of Hughes's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Hughes shall return any amounts paid by PruittHealth.

18. **Binding Nature of Agreement**: This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19. **Entire Agreement**: This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Hughes. Hughes acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20. **Notice Requirements:** Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided. Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt. Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent. Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof. The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Dianne Hughes
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21. **Selective Enforcement**: The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22. **Compliance with Older Workers Benefit Protection Act**: Hughes, being 40 years of age or older, is advised of and acknowledges the following:

    (A)    **Twenty-One Day Consideration Period**. Hughes shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21. During this twenty-one (21) day period and before signing this AGREEMENT, Hughes is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at her own expense. The terms and provisions of this AGREEMENT are null and void if not accepted by Hughes within the twenty-one (21) day period. Hughes may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

    (B)    **Release of Age Discrimination in Employment Act Claims**. By signing this AGREEMENT, Hughes waives any claims she has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Hughes's execution of the AGREEMENT.

    (C)    **Revocation Period**. Hughes shall have seven (7) calendar days from the date she signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period. Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release." The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Hughes's execution of this AGREEMENT. This AGREEMENT shall not become effective or enforceable until the revocation period has expired. If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**HUGHES IS HEREBY ADVISED THAT SHE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**HUGHES AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, HUGHES FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION,**

**ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

[ REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK ]

**ACCEPTED AND AGREED:**

By: _____       _____

    DIANNE HUGHES                          Date


    STATE OF GEORGIA
    COUNTY OF _____

    BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared __Dianne Hughes__, known to me
to be the person whose name is subscribed to the foregoing instrument and signed in
my presence and swore upon oath this AGREEMENT was executed for the purposes
and consideration therein expressed.

    SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of _____
_____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____


**ACCEPTED AND AGREED:**

By: _____       _____

    PruittHealth                           Date

# EXHIBIT A

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:   <u>Agreement and General Release</u>

Dear Sir/Madam:

   On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me. I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

   More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release. I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release. Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

            Very truly yours,



            Dianne Hughes

# Lawrence Russell-
# Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Lawrence Russell ("Russell") and PruittHealth Home Health – North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc.,  PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS,** Russell filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece*, on behalf of herself and all those similarly situated, *v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation*, Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS,** PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHEREAS,** Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Russell have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Russell with certain considerations described below, provided Russell releases PruittHealth from any claims Russell has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1.  **Recitals**: The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.    **Definitions**: Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

    (A)    PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

    (B)    PruittHealth Home Health - North Atlanta, Inc. (d/b/a PruittHealth Home Health – Cobb) f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

    (C)    PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

    (D)    the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.    **Settlement Sum and Payment**: As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Russell the sum of Thirty-Three Thousand Six Hundred Ninety-Two Dollars and 00/100 Cents ($33,692.00), less lawful deductions. This sum shall be allocated as follows:

    (A)    PruittHealth shall make payment in the amount of Five Thousand Five Hundred Dollars and 00/100 Cents ($ 5,500.00), less such applicable deductions, payable to Lawrence Russell. This payment shall be characterized as back wages, and PruittHealth will issue Russell an IRS Form W-2; and,

    (B)    PruittHealth shall make payment in the amount of Five Thousand Five Hundred Dollars and 00/100 Cents ($5,500.00), payable to Lawrence Russell. This amount shall be characterized as liquidated damages, and PruittHealth will issue Russell an IRS Form 1099.

    (C)    PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Twenty-Two Thousand Six Hundred Ninety-Two Dollars and 00/100 Cents ($22,692.00) as Attorney's Fees and Costs in this Lawsuit. PruittHealth shall issue IRS Forms 1099 to Russell and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Russell; (2) an executed letter from Russell in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Russell and Russell's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4.    **Consideration**:  Russell understands and agrees that he will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until his execution of this AGREEMENT including the promises contained herein.

5.    **General Release of Claims**:  In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Russell, for himself and for each of his heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Russell may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to:  back pay; front pay; reinstatement; damages; or benefits.  Russell also releases any and all claims he may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of

1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Russell further represents and affirms that he has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with his efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Russell may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Russell understands and agrees that he is releasing PruittHealth from any and all of the above-specified claims by which he is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Russell or on Russell's behalf, except as otherwise set forth in this Agreement.

6. **Tax Liability**: Russell understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Russell understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is his sole responsibility, and that he will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Russell regarding payment whatsoever, except as set forth in this AGREEMENT. Russell agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Russell further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Russell. In the event Russell receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth,

Russell shall promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7.  **Affirmations**: Russell represents and affirms that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8.  **No Further Employment**: Russell acknowledges that his employment with United Home Care of North Atlanta, Inc. terminated effective on or about January 30, 2011. Russell permanently, unequivocally, and unconditionally waives any and all rights Russell may now have, may have had in the past, or may have in the future to obtain or resume employment with PruittHealth. Russell agrees never to apply for employment with PruittHealth, its parent, successors, affiliates, and subsidiaries. In the event that Russell is ever mistakenly employed by PruittHealth, its parent, successors, affiliates, and/or subsidiaries, Russell agrees to have her employment terminated with no resulting claim or cause of action against PruittHealth, its parent, successors, affiliates, and/or subsidiaries.

9.  **No Assignment**: The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10. **Non-Disparagement**: Russell agrees that he will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute. PruittHealth agrees that it will provide a neutral job reference regarding Russell limited to dates of employment. Any request for a job reference should be directed to fax number (678) 533-6673.

11. **Governing Law and Jurisdiction**: This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event Russell or PruittHealth breaches any provision of this AGREEMENT, Russell and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12. **Conditions**: Should Russell ever breach any provision or obligation under this AGREEMENT, Russell explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Russell's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies PruittHealth may have by virtue of this AGREEMENT or otherwise. Should

PruittHealth ever breach any provision or obligation under this AGREEMENT, PruittHealth explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Russell as a result of PruittHealth's breach.  Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Russell or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**:  The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**:  The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**:  This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties.  Russell agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever.  No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged.  The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**:  The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.  This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable.  However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT.  To the extent any provision herein that relates to the dismissal of Russell's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Russell shall return any amounts paid by PruittHealth.

18.  **Binding Nature of Agreement**:  This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19.  **Entire Agreement**:  This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Russell.  Russell acknowledges that he has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20.  **Notice Requirements:**  Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided.  Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent.  Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof.  The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Lawrence Russell
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21.  **Selective Enforcement**:  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22. **Compliance with Older Workers Benefit Protection Act**: Russell, being 40 years of age or older, is advised of and acknowledges the following:

(A) **Twenty-One Day Consideration Period**.  Russell shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21.  During this twenty-one (21) day period and before signing this AGREEMENT, Russell is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at his own expense.  The terms and provisions of this AGREEMENT are null and void if not accepted by Russell within the twenty-one (21) day period.  Russell may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

(B) **Release of Age Discrimination in Employment Act Claims**.  By signing this AGREEMENT, Russell waives any claims he has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Russell's execution of the AGREEMENT.

(C) **Revocation Period**. Russell shall have seven (7) calendar days from the date he signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period.  Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release."  The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Russell's execution of this AGREEMENT.  This AGREEMENT shall not become effective or enforceable until the revocation period has expired.  If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**RUSSELL IS HEREBY ADVISED THAT HE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**RUSSELL AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, RUSSELL FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION,**

**ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS HE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

[ REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK ]

**ACCEPTED AND AGREED:**

By: _____          _____
      LAWRENCE RUSSELL          Date

STATE OF GEORGIA
COUNTY OF _____

BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared _ Lawrence Russell _, known to
me to be the person whose name is subscribed to the foregoing instrument and signed
in my presence and swore upon oath this AGREEMENT was executed for the purposes
and consideration therein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of _____
_____, 2015, to certify which witness my hand and seal of office.

_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____

**ACCEPTED AND AGREED:**

By: _____          _____
      PruittHealth          Date

**EXHIBIT A**

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:   Agreement and General Release

Dear Sir/Madam:

On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

Very truly yours,


Lawrence Russell   ,

# Mary Jane Santos-
# Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Mary Jane Santos ("Santos") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc., PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

WHEREAS, Santos filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece*, on behalf of herself and all those similarly situated, *v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation*, Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

WHEREAS, PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

WHEREAS, Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

WHEREAS, all monies and wages concededly due to Santos have been or will be paid; and

WHEREAS, all Parties wish to settle their differences without resort to further litigation; and

WHEREAS, PruittHealth is willing to provide Santos with certain considerations described below, provided Santos releases PruittHealth from any claims Santos has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

NOW THEREFORE, in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1.  **Recitals**: The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.   **Definitions**:  Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

(A)   PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

(B)   PruittHealth Home Health - North Atlanta, Inc. (d/b/a PruittHealth Home Health – Cobb) f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

(C)   PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

(D)   the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.   **Settlement Sum and Payment**:  As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Santos the sum of Twelve Thousand Eight Hundred Eighty Dollars and 00/100 Cents ($12,880.00), less lawful deductions.  This sum shall be allocated as follows:

(A)   PruittHealth shall make payment in the amount of Two Thousand One Hundred Dollars and 00/100 Cents ($ 2,100.00), less such applicable deductions, payable to Mary Jane Santos.  This payment shall be characterized as back wages, and PruittHealth will issue Santos an IRS Form W-2; and,

(B)   PruittHealth shall make payment in the amount of Two Thousand One Hundred Dollars and 00/100 Cents ($2,100.00), payable to Mary Jane Santos.  This amount shall be characterized as liquidated damages, and PruittHealth will issue Santos an IRS Form 1099.

(C)   PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Eight Thousand Six Hundred Eighty Dollars and 00/100 Cents ($8,680.00) as Attorney's Fees and Costs in this Lawsuit.  PruittHealth shall issue IRS Forms 1099 to Santos and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

Page 2

PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Santos; (2) an executed letter from Santos in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Santos and Santos's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4.   **Consideration**: Santos understands and agrees that she will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until her execution of this AGREEMENT including the promises contained herein.

5.   **General Release of Claims**: In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Santos, for herself and for each of her heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Santos may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to: back pay; front pay; reinstatement; damages; or benefits. Santos also releases any and all claims she may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of

1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Santos further represents and affirms that she has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with her efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Santos may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Santos understands and agrees that she is releasing PruittHealth from any and all of the above-specified claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Santos or on Santos's behalf, except as otherwise set forth in this Agreement.

6.   **Tax Liability**: Santos understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Santos understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Santos regarding payment whatsoever, except as set forth in this AGREEMENT. Santos agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Santos further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Santos. In the event Santos receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Santos shall

Page 4

promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7.   **Affirmations**:  Santos represents and affirms that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8.   **No Further Employment**:  Santos acknowledges that her employment with United Home Care of North Atlanta, Inc. d/b/a United Home Care - Cobb terminated effective on or about June 23, 2013.  Santos permanently, unequivocally, and unconditionally waives any and all rights Santos may now have, may have had in the past, or may have in the future to obtain or resume employment with PruittHealth.  Santos agrees never to apply for employment with PruittHealth, its parent, successors, affiliates, and subsidiaries.  In the event that Santos is ever mistakenly employed by PruittHealth, its parent, successors, affiliates, and/or subsidiaries, Santos agrees to have her employment terminated with no resulting claim or cause of action against PruittHealth, its parent, successors, affiliates, and/or subsidiaries.

9.   **No Assignment**:  The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10.   **Non-Disparagement**:  Santos agrees that she will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute.  PruittHealth agrees that it will provide a neutral job reference regarding Santos limited to dates of employment.  Any request for a job reference should be directed to fax number (678) 533-6673.

11.   **Governing Law and Jurisdiction**:  This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event Santos or PruittHealth breaches any provision of this AGREEMENT, Santos and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12.   **Conditions**:  Should Santos ever breach any provision or obligation under this AGREEMENT, Santos explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Santos's breach.  Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies

PruittHealth may have by virtue of this AGREEMENT or otherwise. Should PruittHealth ever breach any provision or obligation under this AGREEMENT, PruittHealth explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Santos as a result of PruittHealth's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Santos or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**: The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**: The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**: This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Santos agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever. No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged. The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**: The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable. However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT. To the extent any provision herein that relates to the dismissal of Santos's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Santos shall return any amounts paid by PruittHealth.

18. **Binding Nature of Agreement**:  This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19. **Entire Agreement**:  This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Santos.  Santos acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20. **Notice Requirements:**  Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided.  Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent.  Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof.  The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Mary Jane Santos
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21. **Selective Enforcement**:  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22. **Compliance with Older Workers Benefit Protection Act**: Santos, being 40 years of age or older, is advised of and acknowledges the following:

    (A)    **Twenty-One Day Consideration Period**.  Santos shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21.  During this twenty-one (21) day period and before signing this AGREEMENT, Santos is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at her own expense.  The terms and provisions of this AGREEMENT are null and void if not accepted by Santos within the twenty-one (21) day period.  Santos may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

    (B)    **Release of Age Discrimination in Employment Act Claims**.  By signing this AGREEMENT, Santos waives any claims she has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Santos's execution of the AGREEMENT.

    (C)    **Revocation Period**. Santos shall have seven (7) calendar days from the date she signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period.  Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release."  The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Santos's execution of this AGREEMENT.  This AGREEMENT shall not become effective or enforceable until the revocation period has expired.  If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**SANTOS IS HEREBY ADVISED THAT SHE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**SANTOS AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, SANTOS FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION,**

**ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

[ REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK ]

**ACCEPTED AND AGREED:**

By: _____        _____
     MARY JANE SANTOS                                Date


     STATE OF GEORGIA
     COUNTY OF _____

     BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared  Mary Jane Santos , known to
me to be the person whose name is subscribed to the foregoing instrument and signed
in my presence and swore upon oath this AGREEMENT was executed for the purposes
and consideration therein expressed.

     SUBSCRIBED AND SWORN TO BEFORE ME on this _____day of _____
_____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____


**ACCEPTED AND AGREED:**

By: _____        _____
     PruittHealth                                     Date

# EXHIBIT A

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:    Agreement and General Release

Dear Sir/Madam:

On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

Very truly yours,


Mary Jane Santos

# Stacey Sargent-
# Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Stacey Sargent ("Sargent") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc.,  PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS,** Sargent filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece*, on behalf of herself and all those similarly situated, *v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation*, Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS,** PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHEREAS,** Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Sargent have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Sargent with certain considerations described below, provided Sargent releases PruittHealth from any claims Sargent has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1.    **Recitals**: The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.   **Definitions**:  Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

    (A)   PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

    (B)   PruittHealth Home Health - North Atlanta, Inc. (d/b/a PruittHealth Home Health – Cobb) f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

    (C)   PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

    (D)   the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.   **Settlement Sum and Payment**:  As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Sargent the sum of Twenty-Three Thousand Dollars and 00/100 Cents ($23,000.00), less lawful deductions.  This sum shall be allocated as follows:

    (A)   PruittHealth shall make payment in the amount of Three Thousand Seven Hundred Fifty Dollars and 00/100 Cents ($ 3,750.00), less such applicable deductions, payable to Stacey Sargent.  This payment shall be characterized as back wages, and PruittHealth will issue Sargent an IRS Form W-2; and,

    (B)   PruittHealth shall make payment in the amount of Three Thousand Seven Hundred Fifty Dollars and 00/100 Cents ($3,750.00), payable to Stacey Sargent.  This amount shall be characterized as liquidated damages, and PruittHealth will issue Sargent an IRS Form 1099.

    (C)   PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Fifteen Thousand Five Hundred Dollars and 00/100 Cents ($15,500.00) as Attorney's Fees and Costs in this Lawsuit.  PruittHealth shall issue IRS Forms 1099 to Sargent and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the

receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Sargent; (2) an executed letter from Sargent in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Sargent and Sargent's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4. **Consideration**: Sargent understands and agrees that she will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until her execution of this AGREEMENT including the promises contained herein.

5. **General Release of Claims**: In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Sargent, for herself and for each of her heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Sargent may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to: back pay; front pay; reinstatement; damages; or benefits. Sargent also releases any and all claims she may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act;

Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Sargent further represents and affirms that she has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with her efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Sargent may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Sargent understands and agrees that she is releasing PruittHealth from any and all of the above-specified claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Sargent or on Sargent's behalf, except as otherwise set forth in this Agreement.

6. **Tax Liability**: Sargent understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Sargent understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Sargent regarding payment whatsoever, except as set forth in this AGREEMENT. Sargent agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Sargent further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Sargent. In the event Sargent receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Sargent shall promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7.  **Affirmations**:  Sargent represents and affirms that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8.  **No Further Employment**:  Sargent acknowledges that her employment with United Home Care of North Atlanta, Inc. d/b/a United Home Care - Cobb terminated effective on or about April 8, 2014.  Sargent permanently, unequivocally, and unconditionally waives any and all rights Sargent may now have, may have had in the past, or may have in the future to obtain or resume employment with PruittHealth.  Sargent agrees never to apply for employment with PruittHealth, its parent, successors, affiliates, and subsidiaries.  In the event that Sargent is ever mistakenly employed by PruittHealth, its parent, successors, affiliates, and/or subsidiaries, Sargent agrees to have her employment terminated with no resulting claim or cause of action against PruittHealth, its parent, successors, affiliates, and/or subsidiaries.

9.  **No Assignment**:  The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10.  **Non-Disparagement**:  Sargent agrees that she will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute.  PruittHealth agrees that it will provide a neutral job reference regarding Sargent limited to dates of employment.  Any request for a job reference should be directed to fax number (678) 533-6673.

11.  **Governing Law and Jurisdiction**:  This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event Sargent or PruittHealth breaches any provision of this AGREEMENT, Sargent and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12.  **Conditions**:  Should Sargent ever breach any provision or obligation under this AGREEMENT, Sargent explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Sargent's breach.  Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies PruittHealth may have by virtue of this AGREEMENT or otherwise.  Should PruittHealth ever breach any provision or obligation under this AGREEMENT,

PruittHealth explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Sargent as a result of PruittHealth's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Sargent or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**: The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**: The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**: This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Sargent agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever. No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged. The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**: The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable. However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT. To the extent any provision herein that relates to the dismissal of Sargent's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Sargent shall return any amounts paid by PruittHealth.

18. **Binding Nature of Agreement**:  This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19. **Entire Agreement**:  This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Sargent.  Sargent acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20. **Notice Requirements:**  Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided.  Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent.  Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof.  The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Stacey Sargent
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21. **Selective Enforcement**:  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22. **Compliance with Older Workers Benefit Protection Act**: Sargent, being 40 years of age or older, is advised of and acknowledges the following:

    (A)    **Twenty-One Day Consideration Period**. Sargent shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21. During this twenty-one (21) day period and before signing this AGREEMENT, Sargent is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at her own expense. The terms and provisions of this AGREEMENT are null and void if not accepted by Sargent within the twenty-one (21) day period. Sargent may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

    (B)    **Release of Age Discrimination in Employment Act Claims**. By signing this AGREEMENT, Sargent waives any claims she has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Sargent's execution of the AGREEMENT.

    (C)    **Revocation Period**. Sargent shall have seven (7) calendar days from the date she signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period. Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release." The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Sargent's execution of this AGREEMENT. This AGREEMENT shall not become effective or enforceable until the revocation period has expired. If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**SARGENT IS HEREBY ADVISED THAT SHE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**SARGENT AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, SARGENT FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION,**

**ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

[ REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK ]

**ACCEPTED AND AGREED:**

By: _____          _____
    STACEY SARGENT                            Date


STATE OF GEORGIA
COUNTY OF _____

BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared _Stacey Sargent_, known to me
to be the person whose name is subscribed to the foregoing instrument and signed in
my presence and swore upon oath this AGREEMENT was executed for the purposes
and consideration therein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME on this _____day of _____
_____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____


**ACCEPTED AND AGREED:**

By: _____          _____
    PruittHealth                              Date


Page 10

**EXHIBIT A**

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:   Agreement and General Release

Dear Sir/Madam:

      On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

      More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

                          Very truly yours,


                          Stacey Sargent

# Sandra Shaw-Lo - Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Sandra Shaw-Lo ("Shaw-Lo") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc., PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS**, Shaw-Lo filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece*, on behalf of herself and all those similarly situated, *v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation*, Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS**, PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHEREAS**, Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Shaw-Lo have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Shaw-Lo with certain considerations described below, provided Shaw-Lo releases PruittHealth from any claims Shaw-Lo has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1. **Recitals**: The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.   **Definitions**:  Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

    (A)    PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

    (B)    PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

    (C)    PruittHealth Home Health, Inc. (d/b/a PruittHealth Home Health – Monroe) f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

    (D)    the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.   **Settlement Sum and Payment**:  As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Shaw-Lo the sum of Twenty-Three Thousand Dollars and 00/100 Cents ($23,000.00), less lawful deductions.  This sum shall be allocated as follows:

    (A)    PruittHealth shall make payment in the amount of Three Thousand Seven Hundred Fifty Dollars and 00/100 Cents ($ 3,750.00), less such applicable deductions, payable to Sandra Shaw-Lo.  This payment shall be characterized as back wages, and PruittHealth will issue Shaw-Lo an IRS Form W-2; and,

    (B)    PruittHealth shall make payment in the amount of Three Thousand Seven Hundred Fifty Dollars and 00/100 Cents ($3,750.00), payable to Sandra Shaw-Lo.  This amount shall be characterized as liquidated damages, and PruittHealth will issue Shaw-Lo an IRS Form 1099.

    (C)    PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Fifteen Thousand Five Hundred Dollars and 00/100 Cents ($15,500.00) as Attorney's Fees and Costs in this Lawsuit.  PruittHealth shall issue IRS Forms 1099 to Shaw-Lo and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the

receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Shaw-Lo; (2) an executed letter from Shaw-Lo in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Shaw-Lo and Shaw-Lo's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4. **Consideration**: Shaw-Lo understands and agrees that she will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until her execution of this AGREEMENT including the promises contained herein.

5. **General Release of Claims**: In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Shaw-Lo, for herself and for each of her heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Shaw-Lo may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to: back pay; front pay; reinstatement; damages; or benefits. Shaw-Lo also releases any and all claims she may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of 1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act;

Page 3

Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Shaw-Lo further represents and affirms that she has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with her efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Shaw-Lo may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Shaw-Lo understands and agrees that she is releasing PruittHealth from any and all of the above-specified claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Shaw-Lo or on Shaw-Lo's behalf, except as otherwise set forth in this Agreement.

6.   **Tax Liability**: Shaw-Lo understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Shaw-Lo understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Shaw-Lo regarding payment whatsoever, except as set forth in this AGREEMENT. Shaw-Lo agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Shaw-Lo further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Shaw-Lo. In the event Shaw-Lo receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Shaw-Lo shall promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7. **Affirmations**: Shaw-Lo represents and affirms that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8. **No Further Employment**: Shaw-Lo acknowledges that her employment with United Home Care, Inc. d/b/a United Home Care - Monroe terminated effective on or about February 15, 2013. Shaw-Lo permanently, unequivocally, and unconditionally waives any and all rights Shaw-Lo may now have, may have had in the past, or may have in the future to obtain or resume employment with PruittHealth. Shaw-Lo agrees never to apply for employment with PruittHealth, its parent, successors, affiliates, and subsidiaries. In the event that Shaw-Lo is ever mistakenly employed by PruittHealth, its parent, successors, affiliates, and/or subsidiaries, Shaw-Lo agrees to have her employment terminated with no resulting claim or cause of action against PruittHealth, its parent, successors, affiliates, and/or subsidiaries.

9. **No Assignment**: The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10. **Non-Disparagement**: Shaw-Lo agrees that she will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute. PruittHealth agrees that it will provide a neutral job reference regarding Shaw-Lo limited to dates of employment. Any request for a job reference should be directed to fax number (678) 533-6673.

11. **Governing Law and Jurisdiction**: This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event Shaw-Lo or PruittHealth breaches any provision of this AGREEMENT, Shaw-Lo and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12. **Conditions**: Should Shaw-Lo ever breach any provision or obligation under this AGREEMENT, Shaw-Lo explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Shaw-Lo's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies PruittHealth may have by virtue of this AGREEMENT or otherwise. Should PruittHealth ever breach any provision or obligation under this AGREEMENT,

PruittHealth explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Shaw-Lo as a result of PruittHealth's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Shaw-Lo or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**:  The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**:  The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**:  This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Shaw-Lo agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever. No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged. The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**:  The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**:The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable. However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT.  To the extent any provision herein that relates to the dismissal of Shaw-Lo's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Shaw-Lo shall return any amounts paid by PruittHealth.

18. **Binding Nature of Agreement**: This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19. **Entire Agreement**: This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Shaw-Lo. Shaw-Lo acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20. **Notice Requirements:** Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided. Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt. Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent. Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof. The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Sandra Shaw-Lo
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21. **Selective Enforcement**: The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22. **Compliance with Older Workers Benefit Protection Act**: Shaw-Lo, being 40 years of age or older, is advised of and acknowledges the following:

(A) **Twenty-One Day Consideration Period**. Shaw-Lo shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21. During this twenty-one (21) day period and before signing this AGREEMENT, Shaw-Lo is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at her own expense. The terms and provisions of this AGREEMENT are null and void if not accepted by Shaw-Lo within the twenty-one (21) day period. Shaw-Lo may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

(B) **Release of Age Discrimination in Employment Act Claims**. By signing this AGREEMENT, Shaw-Lo waives any claims she has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Shaw-Lo's execution of the AGREEMENT.

(C) **Revocation Period**. Shaw-Lo shall have seven (7) calendar days from the date she signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period. Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release." The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Shaw-Lo's execution of this AGREEMENT. This AGREEMENT shall not become effective or enforceable until the revocation period has expired. If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**SHAW-LO IS HEREBY ADVISED THAT SHE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**SHAW-LO AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, SHAW-LO FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS**

**INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

[ REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK ]

**ACCEPTED AND AGREED:**

By: _____          _____
    SANDRA SHAW-LO                        Date


STATE OF GEORGIA
COUNTY OF _____

BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared  Sandra Shaw-Lo , known to
me to be the person whose name is subscribed to the foregoing instrument and signed
in my presence and swore upon oath this AGREEMENT was executed for the purposes
and consideration therein expressed.

SUBSCRIBED AND SWORN TO BEFORE ME on this _____day of _____
_____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____


**ACCEPTED AND AGREED:**

By: _____          _____
    PruittHealth                          Date

## EXHIBIT A

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:   Agreement and General Release

Dear Sir/Madam:

On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

Very truly yours,


Sandra Shaw-Lo

# Teresita Small - Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Teresita Small ("Small") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc.,  PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS,** Small filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece*, on behalf of herself and all those similarly situated, *v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation*, Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS,** PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHEREAS,** Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Small have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Small with certain considerations described below, provided Small releases PruittHealth from any claims Small has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1.  **Recitals**:  The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.   **Definitions**:  Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

    (A)   PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

    (B)   PruittHealth Home Health - North Atlanta, Inc. (d/b/a PruittHealth Home Health – Cobb) f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

    (C)   PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

    (D)   the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.   **Settlement Sum and Payment**:  As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Small the sum of Seventeen Thousand Seven Hundred Seventy-Eight Dollars and 00/100 Cents ($17,778.00), less lawful deductions.  This sum shall be allocated as follows:

    (A)   PruittHealth shall make payment in the amount of Two Thousand Eight Hundred Seventy-Five Dollars and 00/100 Cents ($ 2,875.00), less such applicable deductions, payable to Teresita Small.  This payment shall be characterized as back wages, and PruittHealth will issue Small an IRS Form W-2; and,

    (B)   PruittHealth shall make payment in the amount of Two Thousand Eight Hundred Seventy-Five Dollars and 00/100 Cents ($2,875.00), payable to Teresita Small.  This amount shall be characterized as liquidated damages, and PruittHealth will issue Small an IRS Form 1099.

    (C)   PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Twelve Thousand Twenty-Eight Dollars and 00/100 Cents ($12,028.00) as Attorney's Fees and Costs in this Lawsuit.  PruittHealth shall issue IRS Forms 1099 to Small and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Small; (2) an executed letter from Small in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Small and Small's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4.    **Consideration**: Small understands and agrees that she will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until her execution of this AGREEMENT including the promises contained herein.

5.    **General Release of Claims**: In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Small, for herself and for each of her heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Small may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to: back pay; front pay; reinstatement; damages; or benefits. Small also releases any and all claims she may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of

1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Small further represents and affirms that she has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with her efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Small may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Small understands and agrees that she is releasing PruittHealth from any and all of the above-specified claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Small or on Small's behalf, except as otherwise set forth in this Agreement.

6. **Tax Liability**: Small understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Small understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Small regarding payment whatsoever, except as set forth in this AGREEMENT. Small agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Small further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Small. In the event Small receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Small shall promptly,

after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7.     **Affirmations**:  Small represents and affirms that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8.     **No Further Employment**:  Small acknowledges that her employment with United Home Care of North Atlanta, Inc. d/b/a United Home Care - Cobb terminated effective on or about May 15, 2011.  Small permanently, unequivocally, and unconditionally waives any and all rights Small may now have, may have had in the past, or may have in the future to obtain or resume employment with PruittHealth.  Small agrees never to apply for employment with PruittHealth, its parent, successors, affiliates, and subsidiaries.  In the event that Small is ever mistakenly employed by PruittHealth, its parent, successors, affiliates, and/or subsidiaries, Small agrees to have her employment terminated with no resulting claim or cause of action against PruittHealth, its parent, successors, affiliates, and/or subsidiaries.

9.     **No Assignment**:  The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10.    **Non-Disparagement**:  Small agrees that she will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute.  PruittHealth agrees that it will provide a neutral job reference regarding Small limited to dates of employment.  Any request for a job reference should be directed to fax number (678) 533-6673.

11.    **Governing Law and Jurisdiction**:  This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision.  In the event Small or PruittHealth breaches any provision of this AGREEMENT, Small and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12.    **Conditions**:  Should Small ever breach any provision or obligation under this AGREEMENT, Small explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Small's breach.  Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies

PruittHealth may have by virtue of this AGREEMENT or otherwise. Should PruittHealth ever breach any provision or obligation under this AGREEMENT, PruittHealth explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Small as a result of PruittHealth's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Small or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**:  The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**:  The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**:  This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties.  Small agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever.  No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged.  The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**:  The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties.  This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable.  However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT.  To the extent any provision herein that relates to the dismissal of Small's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Small shall return any amounts paid by PruittHealth.

18. **Binding Nature of Agreement**:  This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19. **Entire Agreement**:  This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Small.  Small acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20. **Notice Requirements:**  Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph.  Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided.  Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt.  Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent.  Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof.  The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Teresita Small
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21. **Selective Enforcement**:  The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22. **Compliance with Older Workers Benefit Protection Act**: Small, being 40 years of age or older, is advised of and acknowledges the following:

(A) **Twenty-One Day Consideration Period**. Small shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21. During this twenty-one (21) day period and before signing this AGREEMENT, Small is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at her own expense. The terms and provisions of this AGREEMENT are null and void if not accepted by Small within the twenty-one (21) day period. Small may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

(B) **Release of Age Discrimination in Employment Act Claims**. By signing this AGREEMENT, Small waives any claims she has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Small's execution of the AGREEMENT.

(C) **Revocation Period**. Small shall have seven (7) calendar days from the date she signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period. Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release." The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Small's execution of this AGREEMENT. This AGREEMENT shall not become effective or enforceable until the revocation period has expired. If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**SMALL IS HEREBY ADVISED THAT SHE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**SMALL AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, SMALL FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO**

**THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

[ REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK ]

**ACCEPTED AND AGREED:**

By: _____          _____
     TERESITA SMALL                              Date


STATE OF GEORGIA
COUNTY OF _____

     BEFORE ME, the undersigned authority on this _____ day of _____
_____, 2015 personally appeared   Teresita Small  , known to me
to be the person whose name is subscribed to the foregoing instrument and signed in
my presence and swore upon oath this AGREEMENT was executed for the purposes
and consideration therein expressed.

     SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of _____
_____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____

**ACCEPTED AND AGREED:**

By: _____          _____
     PruittHealth                                Date

# EXHIBIT A

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:   Agreement and General Release

Dear Sir/Madam:

On _____ [date] I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

Very truly yours,


Teresita Small

# Denice Stokes -
# Settlement Agreement

## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release ("AGREEMENT") is entered into by and between Denice Stokes ("Stokes") and PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc.,  PruittHealth Home Health, Inc. f/k/a United Home Care, Inc., and PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation") ("PruittHealth")(collectively, the "Parties").

## RECITALS

**WHEREAS,** Stokes filed claims in a collective action (the "Claims") currently pending in the United States District Court for the Northern District of Georgia that is styled and numbered, *Cathy Reece, on behalf of herself and all those similarly situated, v. United Home Care of North Atlanta, Inc., United Home Care, Inc., and UHS-Pruitt Corporation,* Civil Action No. 1:12-cv-02070-MHC (the "Lawsuit"); and

**WHEREAS,** PruittHealth denies the validity of the Claims and denies that it is subject to any liability for the Claims; and

**WHEREAS**, Lawrence Russell, Teresita Small, Dianne Hughes, Sandra Shaw-Lo, Stacey Sargent, Denice Stokes, Mary Jane Santos, Karen Allmon, and David Allmon filed consents to join the Lawsuit as plaintiffs;

**WHEREAS,** all monies and wages concededly due to Stokes have been or will be paid; and

**WHEREAS,** all Parties wish to settle their differences without resort to further litigation; and

**WHEREAS,** PruittHealth is willing to provide Stokes with certain considerations described below, provided Stokes releases PruittHealth from any claims Stokes has made or might make arising out of her employment or other relationship with PruittHealth and agrees to comply with the other promises and conditions set forth in this AGREEMENT.

**NOW THEREFORE,** in consideration of the mutual covenants and promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the Parties, the Parties agree to be legally bound by the following terms and conditions, which constitute full settlement of any and all disputes between them:

1.  **Recitals**:  The Parties acknowledge that the "WHEREAS" clauses above preceding Paragraph 1 of this Agreement are incorporated herein as material parts to this AGREEMENT.

2.   **Definitions**: Throughout this AGREEMENT, the term "PruittHealth" shall include the following:

   (A)   PruittHealth, Inc. f/k/a Pruitt Corporation (f/d/b/a "UHS-Pruitt Corporation"), as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (B)   PruittHealth Home Health - North Atlanta, Inc. f/k/a United Home Care of North Atlanta, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and

   (C)   PruittHealth Home Health, Inc. (d/b/a PruittHealth Home Health – Rome) f/k/a United Home Care, Inc., as well as its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations; and,

   (D)   the officers, directors, trustees, insurers, shareholders, partners, current and former employees, attorneys and agents, past and present, of each of the aforesaid entities of any entity encompassed by subparagraphs 2(A), 2(B) and 2(C).

3.   **Settlement Sum and Payment**:  As consideration for making this AGREEMENT and compliance with the promises set forth herein, PruittHealth agrees to pay to Stokes the sum of Thirty-Three Thousand One Hundred Twenty Dollars and 00/100 Cents ($33,120.00), less lawful deductions.  This sum shall be allocated as follows:

   (A)   PruittHealth shall make payment in the amount of Five Thousand Four Hundred Dollars and 00/100 Cents ($ 5,400.00), less such applicable deductions, payable to Denice Stokes.  This payment shall be characterized as back wages, and PruittHealth will issue Stokes an IRS Form W-2; and,

   (B)   PruittHealth shall make payment in the amount of Five Thousand Four Hundred Dollars and 00/100 Cents ($5,400.00), payable to Denice Stokes. This amount shall be characterized as liquidated damages, and PruittHealth will issue Stokes an IRS Form 1099.

   (C)   PruittHealth shall make payment to The Garber Law Firm, P.C, Tax Identification Number 58-2623814 in the amount of Twenty-Two Thousand Three Hundred Twenty Dollars and 00/100 Cents ($22,320.00) as Attorney's Fees and Costs in this Lawsuit.  PruittHealth shall issue IRS Forms 1099 to Stokes and The Garber Law Firm, P.C. for the amounts paid as Attorneys' Fees and Costs.

PruittHealth shall deliver the checks identified in Paragraphs 3(A), 3(B), and 3(C) herein to The Garber Law Firm, P.C. no later than twenty-one (21) days after the receipt of all of the following items, unless the Court directs otherwise: (1) an original of this AGREEMENT appropriately signed and dated by Stokes; (2) an executed letter from Stokes in the form attached hereto as Exhibit A (this letter cannot be executed until after the expiration of the seven (7) calendar day revocation period discussed in paragraph 23(C) below); (3) fully-completed W-9 tax forms for Stokes and Stokes's attorney; (4) an Order approving the terms of settlement set forth in this AGREEMENT; and (5) an Order from the Court dismissing, with prejudice, all Claims against PruittHealth in the Lawsuit.

The parties agree that after dismissal of the Lawsuit, the Court shall retain jurisdiction of this matter for the purpose of enforcing this AGREEMENT, which shall be made a part of the Court's Order and which Order shall direct that PruittHealth make the payments identified in Paragraph 3(A), 3(B), and 3(C) herein.

This AGREEMENT shall become effective and the checks described in Paragraph 3(A), 3(B), and 3(C) herein shall become due and payable upon the Effective Date of this AGREEMENT. The "Effective Date" of this AGREEMENT is defined as twenty-one days (21) days after PruittHealth has received all of the items described in this paragraph.

4.    **Consideration**:  Stokes understands and agrees that she will not receive the monies and/or benefits specified in Paragraph 3 herein but for and until her execution of this AGREEMENT including the promises contained herein.

5.    **General Release of Claims**:  In exchange for, and in consideration of, the payments, benefits, and other commitments described above, Stokes, for herself and for each of her heirs, executors, administrators, and assigns, hereby fully releases, acquits, and forever discharges PruittHealth and each of its predecessors, successors and assigns, parent corporations, subsidiary corporations, affiliated corporations, and the officers, directors, shareholders, partners, employees, attorneys and agents, past and present, of each of the aforesaid entities ("Related Persons") of and from any and all claims, liabilities, causes of action, damages, costs, attorneys' fees, expenses, and compensation whatsoever, of whatever kind or nature, in law, equity or otherwise, whether known or unknown, vested or contingent, suspected or unsuspected, that Stokes may now have, has ever had, or hereafter may have relating directly or indirectly to the allegations in the Lawsuit, including, but not limited to, claims for wages and all other compensation, including but not limited to:  back pay; front pay; reinstatement; damages; or benefits.  Stokes also releases any and all claims she may have that arose prior to the date of this AGREEMENT, and hereby specifically waives and releases all claims, including, but not limited to, those arising under Title VII of the Civil Rights Act of 1964, as amended, the Civil Rights Act of 1991; the Equal Pay Act; the Americans With Disabilities Act of

1990; the Rehabilitation Act of 1973, as amended; the Age Discrimination in Employment Act, as amended; the Genetic Information Nondiscrimination Act; Sections 1981 through 1988 of Title 42 of the United States Code, as amended; the Immigration Reform and Control Act, as amended; the Workers Adjustment and Retraining Notification Act, as amended; the Occupational Safety and Health Act, as amended; the Sarbanes-Oxley Act of 2002; the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); the Employee Retirement Income Security Act of 1974, as amended; the National Labor Relations Act; and any and all state or local statutes, ordinances, or regulations, as well as all claims arising under federal, state, or local law involving any tort, employment contract (express or implied), public policy, wrongful discharge, or any other claim. Stokes further represents and affirms that she has not made any request for leave pursuant to the Family and Medical Leave Act which was not granted, nor has PruittHealth interfered in any way with her efforts to take leave pursuant to the Family and Medical Leave Act.

This AGREEMENT shall not apply to rights or claims that may arise after the Effective Date of this AGREEMENT. Nothing in this Paragraph 5 or in this AGREEMENT is intended to limit or restrict any rights Stokes may have to enforce this AGREEMENT or challenge the AGREEMENT's validity under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, or any other right that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Stokes understands and agrees that she is releasing PruittHealth from any and all of the above-specified claims by which she is giving up the opportunity to recover any compensation, damages, or any other form of relief in any proceeding brought by Stokes or on Stokes's behalf, except as otherwise set forth in this Agreement.

6.   **Tax Liability**: Stokes understands that PruittHealth shall issue an IRS Form 1099 for those portions of the payments specified in Paragraph 3 of this AGREEMENT that are not subject to any withholding under the Internal Revenue Code. In paying the amounts specified in Paragraph 3 herein, PruittHealth makes no representation regarding the tax consequences or liability arising from said payments. Stokes understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is her sole responsibility, and that she will pay any such taxes that may be due or become due. PruittHealth has no monetary liability or obligation to Stokes regarding payment whatsoever, except as set forth in this AGREEMENT. Stokes agrees to bear all tax consequences, if any, attendant upon the payment to her of the above-recited sums. Stokes further agrees to hold PruittHealth harmless from and against any tax or tax withholdings claims, amounts, interest, penalties, fines or assessments brought or sought by any taxing authority or governmental agency with regard to the above recited sums with respect to those taxes owed by Stokes. In the event Stokes receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against PruittHealth, Stokes shall

promptly, after receipt of such written notice, notify PruittHealth by letter sent to counsel for PruittHealth.

7.  **Affirmations**: Stokes represents and affirms that she has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which she may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due her, except as provided for in this AGREEMENT.

8.  **Acknowledgement and Authorization**: I am a current employee of PruittHealth Home Health, Inc. d/b/a PruittHealth Home Health – Rome, Inc., and I acknowledge, understand, agree, and state that: (1) I am currently correctly and accurately reporting my working time, I am being paid correctly, and the compensation for my working time is being calculated correctly; (2) I will comply with PruittHealth's payroll reporting policies and accurately report all working time; (3) I will immediately report to a designated Company contact any improper instruction by anyone to work off-the-clock, otherwise under report any working time, or my belief that I am not being properly compensated for the work I perform; and (4) I will not perform any off-the-clock work.

9.  **No Assignment**: The Parties represent and warrant that no person other than the signatories hereto had or has any interest in the matters referred to in this AGREEMENT, that the Parties have the sole right and exclusive authority to execute this AGREEMENT, and that the Parties have not sold, assigned, transferred, conveyed, or otherwise disposed of any claim, demand or legal right that is the subject of this AGREEMENT.

10. **Non-Disparagement**: Stokes agrees that she will not provide information, issue statements, or take any action, directly or indirectly, that would cause PruittHealth embarrassment or humiliation or otherwise cause or contribute to PruittHealth being held in disrepute.

11. **Governing Law and Jurisdiction**: This AGREEMENT shall be governed and conformed in accordance with the laws of the state of Georgia without regard to its conflict of laws provision. In the event Stokes or PruittHealth breaches any provision of this AGREEMENT, Stokes and PruittHealth affirm that either may institute an action to specifically enforce any term or terms of this AGREEMENT.

12. **Conditions**: Should Stokes ever breach any provision or obligation under this AGREEMENT, Stokes explicitly agrees to pay all damages (including, but not limited to, litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by PruittHealth as a result of Stokes's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies PruittHealth may have by virtue of this AGREEMENT or otherwise. Should PruittHealth ever breach any provision or obligation under this AGREEMENT, PruittHealth explicitly agrees to pay all damages (including, but not limited to,

litigation and/or defense costs, expenses, and reasonable attorney's fees) incurred by Stokes as a result of PruittHealth's breach. Nothing in this paragraph shall, or is intended to, limit or restrict any other rights or remedies Stokes or PruittHealth may have by virtue of this AGREEMENT or otherwise.

13. **No Admission of Liability**: The parties agree that neither this AGREEMENT nor the furnishing of the consideration for this AGREEMENT shall be deemed or construed at anytime for any purpose as an admission by PHFNA of any liability or unlawful conduct of any kind.

14. **Headings**: The headings of the provisions herein are intended for convenient reference only, and the same shall not be, nor be deemed to be, interpretative of the contents of such provision.

15. **Modification of Agreement**: This AGREEMENT may not be amended, revoked, changed, or modified in any way, except in writing executed by all Parties. Stokes agrees not to make any claim at any time or place that this AGREEMENT has been verbally modified in any respect whatsoever. No waiver of any provision of this AGREEMENT will be valid unless it is in writing and signed by the party against whom such waiver is charged. The parties acknowledge that only an authorized representative of PruittHealth has the authority to modify this AGREEMENT on behalf of PruittHealth.

16. **Interpretation**: The language of all parts of this AGREEMENT shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any of the Parties. This AGREEMENT has been negotiated by and between attorneys for the Parties and shall not be construed against the "drafter" of the AGREEMENT.

17. **Severability**: The parties explicitly acknowledge and agree that the provisions of this AGREEMENT are both reasonable and enforceable. However, if any portion or provision of this AGREEMENT (including, without implication of limitation, any portion or provision of any section of this AGREEMENT) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this AGREEMENT shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this AGREEMENT. To the extent any provision herein that relates to the dismissal of Stokes's Lawsuit or the general release of claims described in paragraph 5 above is deemed to be illegal, invalid, or unenforceable, PruittHealth is not obligated to honor any of the terms set forth herein and Stokes shall return any amounts paid by PruittHealth.

18. **Binding Nature of Agreement**: This AGREEMENT shall be binding upon each of the Parties and upon their respective heirs, administrators, representatives,

executors, successors, and assigns, and shall inure to the benefit of each party and to their respective heirs, administrators, representatives, executors, successors, and assigns.

19. **Entire Agreement**: This AGREEMENT sets forth the entire AGREEMENT between the Parties hereto, and fully supersedes any prior obligation of PruittHealth to Stokes. Stokes acknowledges that she has not relied on any representations, promises, or agreements of any kind made to her in connection with her decision to accept this AGREEMENT, except for those set forth in this AGREEMENT.

20. **Notice Requirements:** Each notice ("Notice") provided for under this AGREEMENT, must comply with the requirements as set forth in this paragraph. Each Notice shall be in writing and sent by facsimile or depositing it with a nationally recognized overnight courier service that obtains receipts (such as Federal Express or UPS Next Day Air), addressed to the appropriate party (and marked to a particular individual's attention, if so indicated) as hereinafter provided. Each Notice shall be effective upon being so telecopied or deposited, but the time period in which a response to any notice must be given or any action taken with respect thereto shall commence to run from the date of receipt of the Notice by the addressee thereof, as evidenced by the return receipt. Rejection or other refusal by the addressee to accept or the inability to deliver because of a changed address of which no Notice was given shall be deemed to be the receipt of the Notice sent. Any party shall have the right from time to time to change the address or individual's attention to which notices to it shall be sent by giving to the other party at least ten (10) days prior Notice thereof. The Parties' addresses for providing Notices hereunder shall be as follows:

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Denice Stokes
c/o The Garber Law Firm, P.C.
4994 Lower Roswell Rd Ste 14
Marietta, GA 30068-5648

21. **Selective Enforcement**: The Parties agree that the failure of any party to enforce or exercise any right, condition, term, or provision of this AGREEMENT shall not be construed as or deemed a relinquishment or waiver thereof, and the same shall continue in full force and effect.

22. **Compliance with Older Workers Benefit Protection Act**: Stokes, being 40 years of age or older, is advised of and acknowledges the following:

(A)   **Twenty-One Day Consideration Period**.  Stokes shall have up to twenty-one (21) days to consider and accept the terms of this AGREEMENT by fully executing and notarizing it below, and returning it to PruittHealth's counsel, as identified in paragraph 21.  During this twenty-one (21) day period and before signing this AGREEMENT, Stokes is encouraged to consult with an attorney regarding the terms and provisions of this AGREEMENT, at her own expense.  The terms and provisions of this AGREEMENT are null and void if not accepted by Stokes within the twenty-one (21) day period.  Stokes may sign the AGREEMENT prior to the conclusion of the twenty-one (21) day period.

(B)   **Release of Age Discrimination in Employment Act Claims**.  By signing this AGREEMENT, Stokes waives any claims she has or might have against PruittHealth under the Age Discrimination in Employment Act ("ADEA") that accrued prior to the date of Stokes's execution of the AGREEMENT.

(C)   **Revocation Period**.  Stokes shall have seven (7) calendar days from the date she signs this AGREEMENT to revoke the AGREEMENT by notifying PruittHealth in writing prior to the expiration of the seven (7) calendar day period.  Any revocation within this period must state "I hereby revoke my acceptance of our Agreement and General Release."  The written revocation must be personally delivered to PruittHealth in the manner proscribed by paragraph 20 above, and must be postmarked within seven (7) calendar days of Stokes's execution of this AGREEMENT.  This AGREEMENT shall not become effective or enforceable until the revocation period has expired.  If the last day of the revocation period is a Saturday, Sunday, or legal holiday, then the revocation period shall not expire until the next following day that is not a Saturday, Sunday, or legal holiday.

**STOKES IS HEREBY ADVISED THAT SHE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO REVIEW AND CONSIDER THIS AGREEMENT AND IS HEREBY ADVISED IN WRITING TO CONSULT WITH AN ATTORNEY PRIOR TO EXECUTION OF THIS AGREEMENT.**

**STOKES AGREES THAT ANY MODIFICATION, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT DOES NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL TWENTY-ONE (21) CALENDAR DAY CONSIDERATION PERIOD.**

**HAVING ELECTED TO EXECUTE THIS AGREEMENT, TO FULFILL THE PROMISES AND TO RECEIVE THE SUMS AND BENEFITS IN PARAGRAPH 3 ABOVE, STOKES FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE, AND RELEASE ALL CLAIMS SHE HAS OR MIGHT HAVE AGAINST PRUITTHEALTH.**

**ACCEPTED AND AGREED:**

By: _____          _____
       DENICE STOKES                                              Date


       STATE OF GEORGIA
       COUNTY OF _____

       BEFORE ME, the undersigned authority on this _____ day of _____ _____, 2015 personally appeared _ Denice Stokes _, known to me to be the person whose name is subscribed to the foregoing instrument and signed in my presence and swore upon oath this AGREEMENT was executed for the purposes and consideration therein expressed.

       SUBSCRIBED AND SWORN TO BEFORE ME on this _____ day of _____ _____, 2015, to certify which witness my hand and seal of office.


_____
NOTARY PUBLIC – STATE OF GEORGIA

_____
(Printed Name of Notary)

My Commission Expires:

_____


**ACCEPTED AND AGREED:**

By: _____          _____
       PruittHealth                                              Date

Page 9

# EXHIBIT A

PruittHealth
c/o Andrews & Stembridge, LLC
2951 Piedmont Road, Suite 300
Atlanta, Georgia 30305

Re:     Agreement and General Release

Dear Sir/Madam:

On _____ **[date]** I executed an Agreement and General Release between PruittHealth and me.  I was advised by PruittHealth, in writing, to consult with an attorney of my choosing prior to executing this Agreement and General Release.

More than seven (7) calendar days have elapsed since I executed the above-mentioned Agreement and General Release.  I have at no time revoked my acceptance or execution of that Agreement and General Release and hereby reaffirm my acceptance of that Agreement and General Release.  Therefore, in accordance with the terms of our Agreement and General Release, I hereby request payment of the monies described in paragraph 3 of that Agreement.

Very truly yours,

Denice Stokes